**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ROBERT WAYNE CATHCART JR., individually and on behalf of all others similarly situated, | DOCKET NO. _____ |
| | JURY TRIAL DEMANDED |
| Plaintiff | COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b) |
| vs. | |
| APACHE CORPORATION, | |
| Defendant. | |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

1.      Plaintiff Robert Wayne Cathcart Jr., (Cathcart) brings this lawsuit to recover unpaid overtime wages and other damages from Defendant Apache Corporation (Apache) under the Fair Labor Standards Act (FLSA).

2.      Apache is an oil and gas exploration and production company that employs personnel, including foremen like Cathcart, to carry out its work.

3.      Cathcart and the other workers like him regularly worked for Apache in excess of forty (40) hours each week. But these workers never received overtime for hours worked in excess of forty (40) hours in a single workweek.

4.      Instead of paying overtime as required by the FLSA, Apache improperly classified Cathcart and those similarly situated workers as independent contractors and paid them a daily rate with no overtime compensation. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION AND VENUE**

5.      **This** Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this Action involves a federal question under the FLSA.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Apache's principal office is in this District and Division. Specifically, Apache maintains their corporate headquarters in Houston, Texas.

## THE PARTIES

7.     From approximately June 2018 to May 2020, Cathcart worked as a foreman for Apache.

8.     Throughout his employment with Apache, Cathcart was paid a day-rate with no overtime compensation and was misclassified as an independent contractor.

9.     Cathcart's consent to be a party plaintiff is attached as Exhibit A.

10.     Cathcart brings this action on behalf of himself and all other similarly situated workers who were paid by Apache's day-rate system and misclassified as independent contractors.  Apache paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

11.     The class of similarly situated employees or putative class members sought to be certified is defined as follows:

> **All individuals who performed work for or on behalf of Apache Corporation as foremen and were paid a day rate during the past three years. (Putative Class Members).**

12.     Defendant Apache Corporation is a corporation with its principal corporate office in Houston, Texas.  Apache does business throughout the United States. Apache may be served through its registered agent: CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201 or wherever they may be found.

## COVERAGE UNDER THE FLSA

13.     At all times hereinafter mentioned, Apache has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

14.     At all times hereinafter mentioned, Apache has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

15.     At all times hereinafter mentioned, Apache has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce—such as equipment, hand tools, computers, automobiles, and cell phones—by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

16.     At all times hereinafter mentioned, Cathcart and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

17.     As will be shown through this litigation, Apache treated Cathcart the Putative Class Members as employees and uniformly dictated the pay practices Cathcart and its other employees were subjected to.

## FACTS

18.     Apache is a Houston-based oil and gas company. To complete their business objectives, Apache hires personnel (like Cathcart) to perform work for Apache's well sites.

19.     Apache's employees (like Cathcart) routinely handle goods or materials – such as hard hats, tools, steel toe shoes, automobiles, and cell phones - that have moved in, or were produced for, interstate commerce.

20.     Many of these individuals worked for Apache on a day-rate basis and make up the proposed Putative Class. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work as foremen.

21.     Apache paid the Putative Class Members a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of forty (40) hours in a workweek.

22.     For example, Cathcart worked for Apache from June 2018 to May 2020 as a Foreman. Throughout his employment with Apache, he was paid on a day-rate basis.

23.     As a Foreman, Cathcart traveled between various jobsites in the field.  Cathcart and the Putative Class Members' primary duties consisted of ensuring Apache's workers followed company safety procedures and complied with various safety regulations applicable to Apache's work.

24.     Cathcart normally worked 10 to 12 hours a day and 6 to 7 days a week.

25.     Cathcart was never guaranteed a salary when he worked for Apache.

26.     Cathcart was required to report the days worked to Apache, not the actual hours he worked.

27.     The work Cathcart performed was an essential and integral part of Apache's core business.

28.     To the extent Cathcart and other similarly situated workers make "decisions," the decisions do not require the exercise of independent discretion and judgment.

29.     Apache's foremen are not permitted to deviate from established standards.

30.     Instead, Apache's foremen like Cathcart apply well-established techniques and procedures. The reports submitted by Cathcart to his supervisors is generated and required by Apache. The assignments and schedules for Cathcart and the other workers are created and assigned by Apache. The timesheets that Cathcart and the other foremen submit to be paid are approved and audited by Apache.

31.     Although Apache misclassified many of these workers as independent contractors, Apache controlled all the significant or meaningful aspects of the job duties performed by Cathcart.

32.     Apache did not require any substantial investment by Cathcart or the Putative Class Members for them to perform the work that was required.

33.     Apache determined Cathcart and the Putative Class Members opportunity for profit and loss.

34.     Cathcart and the Putative Class Members were not required to possess any unique or specialized skillset (other than that maintained by all other employees in their respective position) to perform their job duties.

35.     Even though Cathcart often worked away from Apache's offices, Apache still controlled all aspects of Cathcart's job activities by enforcing mandatory compliance with Apache's policies and procedures.

36.     Apache and its clients controlled all the significant or meaningful aspects of the job

37.     duties performed by Cathcart and the Putative Class Members.

38.     Apache directly determined Cathcart rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working for Apache.

39.     Very little skill, training, or initiative was required of Cathcart to perform his job duties.

40.     Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Apache or its clients. Virtually every job function was pre-determined by Apache, including the tools to use at a jobsite, the data to compile, the schedule of work, and related work duties. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

41.     Apache made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which Cathcart and the Putative Class Members worked.

42.     All of the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities

performed by each person.

43.     The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

44.     Cathcart and the Putative Class Members were economically dependent on Apache during their employment.

45.     Cathcart and the Putative Class Members earning opportunities were based on the number of days Apache scheduled them to work.

46.     Apache's policy of failing to pay its employees, including Cathcart, overtime violates the FLSA because these workers are performing non-exempt job duties.

47.     It is undisputed that Cathcart and the Putative Class Members are performing manual labor and working long hours out in the field.

48.     In fact, while Cathcart and the Putative Class Members were classified as independent contractors, they were regularly on call for Apache and/or its clients and were expected to drop everything and work whenever needed.

49.     Apache maintained the right to deduct from Plaintiff's and the Putative Class Members' pay using incremental or partial day deductions.

50.     Apache's policy permitting deductions is improper and violates the FLSA's salary basis test.

51.     Apache's day-rate system violates the FLSA because Cathcart and those similarly situated workers did not receive any overtime pay for hours worked over 40 hours each week.

### FLSA VIOLATIONS

52.     As set forth herein, Apache has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an Apache engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours

without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

53.    Apache knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Apache's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

54.    Under Apache's policies, Plaintiff and the Putative Class Members did not receive a guaranteed salary.

55.    Plaintiff and the Putative Class Members were not paid a guaranteed salary in accordance with the FLSA.

56.    Accordingly, Cathcart and the Putative Class Members are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

COLLECTIVE ACTION ALLEGATIONS

57.    Cathcart incorporates all previous paragraphs and alleges that the illegal pay practices Apache imposed on Cathcart were likewise imposed on the Putative Class Members.

58.    Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

59.    Numerous other individuals who worked with Cathcart indicated they were paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

60.    Based on his experience and tenure with Apache, Cathcart is aware that Apache's illegal practices were imposed on the Putative Class Members.

61.    The Putative Class Members were all not afforded the overtime compensation when

they worked in excess of forty (40) hours per week.

62.     Apache's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

63.     Cathcart's experiences are therefore typical of the experiences of the Putative Class Members.

64.     The specific job titles or precise job locations of the Putative Class Members do not prevent class or collective treatment.

65.     Cathcart has no interest contrary to, or in conflict with, the Putative Class Members. Like each Putative Class Member, Cathcart has an interest in obtaining the unpaid overtime wages owed to him under state and/or federal law.

66.     A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

67.     Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Apache will reap the unjust benefits of violating the FLSA and applicable state labor laws.

68.     Furthermore, even if some of the Putative Class Members could afford individual litigation against Apache, it would be unduly burdensome to the judicial system.

69.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

70.     The questions of law and fact common to the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.     Whether Apache employed the Putative Class Members within the meaning of the applicable state and federal statutes, including the FLSA;

b.    Whether the Putative Class Members were improperly classified as independent contractors;

c.    Whether Apache's day rate pay practice meets the salary-basis test;

d.    Whether Apache's decision to not pay time and a half for overtime to the Putative Class Members was made in good faith;

e.    Whether Apache's decision to classify the members of the Class as independent contractors was made in good faith;

f.    Whether Apache's violation of the FLSA was willful; and

g.    Whether Apache's illegal pay practices were applied to the Putative Class Members.

71.    Cathcart's claims are typical of the claims of the Putative Class Members. Cathcart and the Putative Class Members sustained damages arising out of Apache's illegal and uniform employment policy.

72.    Cathcart knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a collective action.

73.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

74.    Cathcart demands a trial by jury.

### RELIEF SOUGHT

75.    WHEREFORE, Cathcart prays for judgment against Apache as follows:

a.    An Order designating the Putative FLSA Class as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.     For an Order appointing Cathcart and his counsel to represent the interests of the FLSA Class;

c.     For an Order finding Apache liable to Cathcart and the Potential Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

d.     For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

e.     For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Michael A. Josephson_
     **Michael A. Josephson**
     Texas Bar No. 24014780
     **Andrew W. Dunlap**
     Texas Bar No. 24078444
     **Taylor Montgomery**
     Texas Bar No. 24106326
     **JOSEPHSON DUNLAP LLP**
     11 Greenway Plaza, Suite 3050
     Houston, Texas 77046
     713-352-1100 – Telephone
     713-352-3300 – Facsimile
     mjosephson@mybackwages.com
     adunlap@mybackwages.com
     tmontgomery@mybackwages.com

     **AND**

     **Richard J. (Rex) Burch**
     Texas Bar No. 24001807
     **BRUCKNER BURCH PLLC**
     11 Greenway Plaza, Suite 3025
     Houston, Texas 77046
     713-877-8788 – Telephone
     713-877-8065 – Facsimile
     rburch@brucknerburch.com

     **ATTORNEYS IN CHARGE FOR PLAINTIFFS**